Filed 9/5/18

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C074051 |
| Plaintiff and Respondent, | (Super. Ct. No. 11F08121) |
| v. | |
| RICHARD TYRELL CARTER, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Timothy M. Frawley, Judge. Reversed with directions.

David Y. Stanley, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Senior Assistant Attorney General, Daniel B. Bernstein, Supervising Deputy Attorney General, Peter H. Smith, Deputy Attorney General, for Plaintiff and Respondent.

Defendant Richard Tyrell Carter claims cruel and unusual punishment (U.S. Const., Eighth Amend.) in his sentence of 55 years to life in prison for a second-degree murder he committed at age 17, with personal use and discharge of a firearm causing death, possession of a firearm by a felon, and a prior strike conviction for robbery. (Pen. Code, §§ 187, 12022.53, subd. (d), 12021, subd. (a)(1), 667, subds. (b)-(i), 1170.12; unless otherwise stated, statutory references that follow are to the Penal Code.) The Attorney General acknowledges this sentence is the functional equivalent of a sentence of life in prison without possibility of parole (LWOP). (*People v. Franklin* (2016) 63 Cal.4th 261, 268 (*Franklin*) [trial court may not sentence juvenile to functional equivalent of LWOP for homicide offense without Eighth Amendment protections outlined by United States Supreme Court].)

This appeal is not rendered moot by 2013 legislation affording parole hearings for juveniles with life sentences (§§ 3046, 3051, 4801; Stats. 2013, ch. 312, § 4 (Sen. Bill No. 260); *Franklin, supra*, 63 Cal.4th 261), because the legislation is inapplicable to sentences imposed under the three strikes law. (§ 3051, subd. (h).)

To address defendant's cruel and unusual punishment claim in the trial court, the trial court considered defendant's youth -- but in the context of considering whether to strike the prior conviction for purposes of three-strikes sentencing in furtherance of the interests of justice under section 1385 and *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*). This would have reduced the sentence to 40 years to life in prison. The trial court considered defendant's youth but declined to strike the prior conviction, finding that although defendant was able to change, he was unwilling to do so.

While this case was pending on appeal, the California Supreme Court held that a statute giving trial courts discretion to impose a sentence less than LWOP on a juvenile who commits special circumstance murder (§ 190.5) must be construed without a presumption in favor of LWOP (as previously construed by case law), in order that the

2

statute not violate the Eighth Amendment. (*People v. Gutierrez* (2014) 58 Cal.4th 1354 (*Gutierrez*).) *Gutierrez* noted in dictum that a trial court's decision to strike prior convictions in the context of the Three Strikes law is " 'carefully circumscribe[d]' " by the law's preference against striking prior convictions pursuant to section 1385 or *Romero*, a presumption similar to that considered in *Gutierrez.* (*Gutierrez, supra*, 58 Cal.4th at p. 1382; see also, *People v. Carmony* (2004) 33 Cal.4th 367, 375, 378 (*Carmony*).) *Gutierrez* compels a new sentencing hearing, at which the trial court shall reconsider the sentence in light of recent case law holding that the Eighth Amendment's ban on cruel and unusual punishment requires the sentencing court to consider factors bearing on the "distinctive attributes of youth" before imposing an LWOP sentence on a juvenile offender.

Other recent changes in law demand that we not only vacate the sentence, but also conditionally reverse the conviction and remand to the trial court with directions to transfer the case to the juvenile court for a transfer hearing to determine the propriety of prosecution in adult criminal court had the case originally been filed in juvenile court (Welf. & Inst. Code, § 707) pursuant to *People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, which held Proposition 57 retroactive.

If the juvenile court determines it would not have transferred defendant to criminal court, the juvenile court shall treat defendant's convictions as juvenile adjudications and impose an appropriate disposition.

If the juvenile court determines it would have transferred defendant to criminal court, the case shall be transferred to criminal court, which shall reinstate defendant's convictions but conduct a resentencing hearing on the vacated sentence in accordance with this opinion. At such resentencing hearing, defendant may ask the trial court to exercise its discretion to strike the gun enhancement under recent amendment to section 12022.53, subdivision (h) (Stats. 2017, ch. 682, § 2 (Sen. Bill No. 620), operative Jan. 1, 2018), which we held retroactive in *People v. Woods* (2018) 19 Cal.App.5th 1080.

If the conviction is reinstated, the trial court after the resentencing hearing shall prepare a new abstract of judgment and forward it to the Department of Corrections and Rehabilitation, taking into consideration errors in the original abstract that need correction, as we discuss *post*.

## FACTS AND PROCEEDINGS

On the night of October 11, 2011, one week after his 17th birthday, defendant and his brother went to a house on Decathlon Circle in Sacramento, where they participated in a game of shooting dice with a group of people outside the house. A green pickup truck drove up, stopped in the street, and the driver reached for the door handle. Defendant fired a gun at the driver several times, killing him. Apparently, the victim was there that night looking for a friend whose girlfriend was concerned about his whereabouts.

Witnesses were inconsistent in their statements to police and trial testimony.

Motive for the shooting was unclear. The prosecution's theory was that defendant was anxious that a drive-by shooting might occur which, standing alone, was insufficient for the imperfect self-defense theory in the voluntary manslaughter instruction given to the jury. The defense theory was that the witnesses were unreliable, and the prosecution failed to prove its case.

The jury found defendant guilty of second degree murder and possession of a firearm by a felon (defendant having stipulated to a prior felony conviction) and found true that defendant personally used and discharged a firearm causing death. The trial court found true that defendant had a prior strike conviction for robbery for purposes of three-strikes sentencing.

The probation report recommended a sentence of 55 years to life in prison based on a term of 15 years to life for murder, doubled to 30 years under the three-strikes law,

4

plus a consecutive term of 25 years to life for the firearm enhancement, and a concurrent two-year term for possession of a firearm by a felon.

Defendant's sentencing memorandum argued a sentence of 55 years to life would be a de facto LWOP that would constitute cruel and/or unusual punishment under the federal and state Constitutions. Defendant was born October 4, 1994, and committed the murder at age 17. With a minimum term of 55 years, he would not be eligible for parole consideration until age 72. Defendant cited life expectancy statistics of 64.9 years for an African-American male born in 1994, and 72.4 years for a male without regard to race. The prosecutor argued race should not be taken into account.

Defendant asked the court to impose a sentence of only 25 years to life, without explaining a basis to arrive at this number. The defense stated it would not be satisfied with the trial court striking the prior robbery conviction, because that would only reduce the sentence to 40 years to life, which would still be too harsh. The prosecutor responded that, assuming 55 years was a de facto LWOP, defendant's extensive record justified it, and cruel/unusual punishment would be an issue only if the sentence were mandatory, which was not the case because the trial court had discretion to strike the prior conviction under *Romero*, even though the defense had declined to made a *Romero* request.

The probation report showed defendant was arrested in September 2009, at age 14, when, after a run-in with schoolmates, he was found in possession of nine rounds of nine millimeter ammunition at school. The juvenile court placed him on informal probation. He later failed to appear for an Appearance Progress Report hearing and failed to complete the terms and conditions of his probation. He was arrested, tried as an adult, and convicted of second degree robbery committed at age 15 with an accomplice who pushed the muzzle of a gun into the chest of the victim, who was also a juvenile. He violated probation by being in a car with others and a loaded gun. He was classified in jail screening as a gang member.

5

The prosecutor added other facts from defendant's truant and delinquent background. For example, at age 9 he punched another student in the face and helped steal a bike. At age 10, the school wrote him up several times for threatening a student, fighting at school, throwing a chair, disobeying teachers, and bringing a pellet gun to school. That year, defendant's parents were arrested for theft of utility services and were reported to Child Protective Services for child neglect. At age 11, defendant slapped two youths and was arrested for felony attempted vandalism for pulling a metal wire from a power pole. The charge was conditionally dismissed. At age 13, he physically assaulted other students. At age 14, he was declared a dependent of the juvenile court due to domestic violence between his mother and stepfather. The case was later closed, with defendant placed in his mother's home. With regard to defendant's 2009 arrest for possession of ammunition at age 14, defendant claimed the ammunition was not his. Defendant stated at the jail that he was a member of the Gunz Up gang. At age 15, defendant was arrested in April 2010, when officers responding to a call about a domestic disturbance heard sounds of a fight, entered the apartment, and found defendant on top of his girlfriend, holding her down. She had an abrasion on her cheek and a torn shirt but declined to cooperate with police. Defendant's fourth arrest was in April 2010 for the robbery of which he was convicted.

Defendant submitted educational and psychoeducational evaluations showing apparent learning disabilities and deficits in processing information. The defense also submitted a psychiatric evaluation by Dr. Matthew Soulier, who opined defendant "is still extremely unlearned and immature . . . [¶] . . . His brain is yet to fully mature on a biological level. Within 3-5 years, his brain will further mature, rendering him better able to process information, risk, and consequences."

The prosecutor argued Dr. Soulier did not have complete information, e.g., did not have access to a section 1368 psychological evaluation of defendant's competency to stand trial for the 2010 robbery, which concluded defendant -- then age 15 -- was "greatly

6

magnifying, exaggerating and even malingering his difficulties." The evaluator caught defendant knowing things he initially claimed not to know and presenting himself as operating at a level below that reflected by the record. The court in the robbery case found defendant competent to stand trial. Over defense objection (not renewed on appeal), the trial court considered the section 1368 evaluation.

In sentencing defendant, the trial court noted the law was developing regarding re-examination of a juvenile's prospects after years in custody, but "[w]e don't have that situation here. I am asked to make that assessment of an individual who is now still young and hasn't gone through that process so I am going to stick with the laws that are currently on the books; and I will undertake a *Romero* analysis. [¶] Actually, technically, the defense can only suggest a *Romero* analysis and can't make a motion under the law; but on my own, I will undertake that analysis so we will do that now."

The court noted the question was whether defendant falls outside the spirit of the three strikes law, taking into consideration the circumstances of the current offense, the strike offense, defendant's other criminal record, as well as his background, character and prospects, including his age. "And then I have to consider whether, if the prior strike is not dismissed or stricken, will the mandated punishment cause a severe, unreasonable, and disproportionate detriment to the defendant when taking all factors into situation [*sic*]? [¶] Conversely, if stricken, can an adequate and just punishment be imposed?"

The court stated: "[I]t is pretty clear that the crime for which Mr. Carter is to be sentenced today does not represent a single or even just a second instance of otherwise abhorrent behavior. In retrospect, one could say we saw this coming this day.

"I agree that Mr. Carter hasn't had the benefit of good parenting, but there are other people who would appear to have attempted to intervene in his life and provide the structure and the guidance; but he has rejected that.

"Some of the points that both counsel have raised actually would be considered under this next heading is the defendant's background, his character, his prospect.

7

"I have considered his age. The appellate cases tell us I have to consider his willingness to participate in rehab programs. What I know today is that he doesn't take his medication. He has not availed himself of programs that might be available to him.

"I am supposed to consider whether or not he has any valuable skills. He is young but other people his age have progressed educationally and he has not. Apparently, there are some cognitive deficits that he has, which I have taken into consideration.

"The cases tell me I have to consider his family status and his employment history. His employment history consists, I guess, of working for his stepfather at times.

"I have considered all the information in all of the reports, I think, that extensively addresses this."

Defense counsel said defendant had progressed educationally because he graduated from high school, though reading at only a third grade level.

The court "[n]ext . . . considered whether, if the strike is not stricken, will the mandated punishment cause a severe, unreasonable, and disproportionate detriment," taking all factors into consideration. The prosecutor argued that, as long as the court was exercising its *Romero* discretion, there was no cruel/unusual punishment problem. The prosecutor also argued (incorrectly) that the possibility of executive clemency mitigated the punishment. (*Graham v. Florida* (2010) 560 U.S. 48, 69-70 [176 L.Ed.2d 825] (*Graham*) [remote possibility of executive clemency did not mitigate harshness of sentence].)

The trial court stated: "Basically, the only reason that could justify striking the prior strike conviction is the defendant's youth. There is nothing about his life that mitigates that, other than he is young and he has not had good parenting, has not grown up in positive circumstances. [¶] That being said, there is nothing that gives me much hope about Mr. Carter. If there was just something in his background, a glimmer that suggested to me he wanted to change, *I think he has the ability to change* [italics added]; but he hasn't demonstrated any willingness to change. [¶] I understand -- and you

8

continue to dispute that he is responsible for this second degree murder but even so, there has been no expression of remorse that I can detect."

At the point in time when the trial court said defendant had not demonstrated willingness to change, defendant was 18 years and eight months old.

The court declined to strike the prior robbery conviction and sentenced defendant to an aggregate term of 55 years to life in prison based on a term of 15 years to life for the murder, doubled to 30 years under the three-strikes law, plus a consecutive term of 25 years to life for the firearm enhancement. The court sentenced defendant to a concurrent two-year term for possession of a firearm by a felon. The court terminated probation for the prior robbery and applied custody credits to the probation violation. The court told defendant, "it is entirely possible -- some might say likely -- at some point the law will provide you with a means of shortening your sentence and whether that happens and whether your sentence is ever shortened, whether you are paroled, would depend largely on your conduct in prison. I hope you see that as an incentive to turn your life around."

DISCUSSION

I

*Defendant's Contention Is Not Moot*

Recent legislation has not rendered moot the constitutional question in this appeal.

Section 3051, which affords juvenile offenders a later parole hearing of LWOP sentences (Stats. 2013, ch. 312, § 4 (Sen. Bill No. 260); *Franklin, supra*, 63 Cal.4th 261 [statute renders Eighth Amendment claim of cruel and unusual punishment moot]), does not apply because the legislation expressly states it is inapplicable to sentences imposed under the three strikes law. (§ 3051, subd. (h) [statute does not apply to cases in which sentencing occurs pursuant to section 1170.12 and section 667, subds. (b)-(i)]; see also *People v. Contreras* (2018) 4 Cal.5th 349, 359, 381 [*Franklin* does not apply to One Strike exception under section 3051, subdivision (h)].)

9

Earlier legislation, section 1170, subdivision (d)(2), which allows a prisoner to ask the trial court for a hearing for recall and resentencing after 15 years of an LWOP sentence -- assuming it could apply to the functional equivalent of LWOP -- does not defeat a claim of cruel and unusual punishment, because the question is whether the sentence " 'at the outset' " is disproportionate. (*Gutierrez*, *supra*, 58 Cal.4th at p. 1386.)

## II

### *Standard of Review*

An Eighth Amendment challenge presents a question of law. (*Gutierrez*, *supra*, 58 Cal.4th at p. 1368.)

We review for abuse of discretion a trial court's decision not to strike a prior conviction under section 1385 or *Romero*. (*Carmony*, *supra*, 33 Cal.4th at p. 376.) But " 'all discretionary authority is contextual' [citation] [and] we cannot determine whether a trial court has acted irrationally or arbitrarily in refusing to strike a prior conviction allegation without considering the legal principles and policies that should have guided the court's actions." (*Id*. at p. 377.) The legal principles include avoidance of an unconstitutional cruel and unusual punishment in sentencing juveniles.

## III

### *Cruel and Unusual Punishment*

We accept for purposes of this appeal the People's concession that the sentence of 55 years to life in prison was a de facto LWOP. Eighth Amendment restrictions on sentencing juveniles to LWOPs apply to sentences that are the functional equivalent of LWOP in that the release date is near or beyond the juvenile's life expectancy. (*Franklin*, *supra*, 63 Cal.4th at pp. 276-277, citing *Sumner v. Shuman* (1987) 483 U.S. 66, 83 [97 L.Ed.2d 56] [there is no basis for distinguishing between LWOP and sentence

for a number of years exceeding normal life expectancy]; *People v. Caballero* (2012) 55 Cal.4th 262, 268.)

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual punishment" and is binding on the states through the 14th Amendment. (*Franklin, supra*, 63 Cal.4th at p. 273.)  Although defendant cites California's prohibition on "cruel or unusual punishment" (Cal. Const., art. I, § 17), he offers no argument, and we need not consider it.  (*People v. Stanley* (1995) 10 Cal.4th 764, 793 [reviewing court need not address points not briefed].)

Punishment for crime should be graduated and proportioned to both the offender and the offense.  (*Miller v. Alabama* (2012) 567 U.S. 460, 469 [183 L.Ed.2d 407] (*Miller*).)  "Protection against disproportionate punishment is the central substantive guarantee of the Eighth Amendment and goes far beyond the manner of determining a defendant's sentence."  (*Montgomery v. Louisiana* (2016) 577 U.S. __, __ [193 L.Ed.2d 599, 618] (*Montgomery*).)

*Graham, supra,* 560 U.S. 48, held the Eighth Amendment prohibits a State from imposing a LWOP sentence on a juvenile *nonhomicide* offender.  (*Id*. at p. 69.)

*Miller*, *supra*, 567 U.S. 460, held the Eighth Amendment prohibits a *mandatory* LWOP sentence for a juvenile offender who commits homicide.  (*Id*. at p. 465.) Juveniles are "constitutionally different from adults for purposes of sentencing."  (*Id*. at p. 471.)  Minors' immaturity and underdeveloped sense of responsibility lead to recklessness and impulsivity; they are more vulnerable to negative influences and outside pressures including family environment over which they have limited control; and their character is less fixed than an adult's such that their actions are less likely to be evidence of irretrievable depravity.  (*Ibid*.)  The distinctive attributes of youth also diminish justification for LWOPs, e.g., ordinary adolescent development diminishes the likelihood that a juvenile offender will forever be a danger to society.  (*Id*. at p. 472.)

11

As later explained by the United States Supreme Court, "*Miller* . . . did more than require a sentencer to consider a juvenile offender's youth before imposing life without parole; it established that the penological justifications for life without parole collapse in light of 'the distinctive attributes of youth.' [Citation.] Even if a court considers a child's age before sentencing him or her to a lifetime in prison, that sentence still violates the Eighth Amendment for a child whose crime reflects ' "unfortunate yet transient immaturity." ' [Citation to *Miller*, *supra*, 567 U.S. at p. 479.] Because *Miller* determined that sentencing a child to life without parole is excessive for all but ' "the rare juvenile offender whose crime reflects irreparable corruption," ' [citation], it rendered life without parole an unconstitutional penalty for 'a class of defendants because of their status' -- that is, juvenile offenders whose crimes reflect the transient immaturity of youth. [Citation.]" (*Montgomery*, *supra*,193 L.Ed.2d at pp. 619-620 [*Miller* announced a new substantive constitutional rule that was retroactive on state collateral review].)

*Gutierrez, supra*, 58 Cal.4th 1354, applied cruel and unusual punishment principles to a nonmandatory sentence, holding that, to avoid a constitutional problem, a statute (§ 190.5) giving trial courts discretion to impose a lesser sentence than LWOP on 16- or 17-year olds convicted of special circumstance murder, must be construed and applied with no presumption in favor of LWOP.

Here, we have a homicide offense but neither LWOP nor its functional equivalent was mandatory, in that the trial court had discretion to reduce the sentence by dismissing the prior strike conviction under section 1385 and *Romero*. In these circumstances, we are guided by *Gutierrez*, which held (1) LWOP sentences were not mandatory in that trial courts had discretion not to impose LWOP on juveniles for special circumstance murder (§ 190.5, subd. (b) [penalty for special circumstance murder by minor age 16 to 18 shall be LWOP " 'or, at the discretion of the court, 25 years to life' "]), but (2) the sentences must be selected with no presumption in favor of LWOP and the courts must consider the *Miller* factors. (*Gutierrez*, *supra*, 58 Cal.4th 1354.) Construing section 190.5,

12

subdivision (b), to establish a presumption in favor of LWOP (as had been done by prior case law) would raise "serious constitutional concerns under the reasoning of *Miller* and the body of precedent on which *Miller* relied." (*Gutierrez*, *supra*, 58 Cal.4th at p. 1387.) The California Supreme Court accordingly construed the statute to render it free from doubt as to its constitutionality, by holding the statute confers discretion on the sentencing court to impose either LWOP or a term of 25 years to life, with no presumption in favor of LWOP. (*Ibid*.) Although section 190.5, subdivision (b), did not expressly direct the trial court to consider aggravating and mitigating factors including the nature and circumstances of the offense and the offender, they were implied. (*Id*. at p. 1387.) Those factors included the age of the defendant at the time of the crime. (*Id*. at p. 1388.) This factor considers not only the age but any age-related matter suggested by the evidence or by common experience or morality. (*Ibid*.) *Gutierrez* held the sentencing court, before imposing the nonmandatory LWOP sentence, had to consider the *Miller* factors: (1) the offender's chronological age and its hallmark features, including immaturity, impetuosity, and failure to appreciate risks and consequences; (2) environmental vulnerabilities including childhood abuse or neglect, familial drug or alcohol abuse, lack of adequate parenting or education, prior exposure to violence, and susceptibility to psychological damage or emotional disturbance; (3) circumstances of the offense including the extent of the defendant's participation and any familial or peer pressures; (4) whether the offender might have been charged with a lesser offense if not for incompetencies of youth; and (5) any evidence or other information in the record bearing on the possibility of rehabilitation. (*Gutierrez*, *supra*, 58 Cal.4th at pp. 1388-1390.)

In sum, *Gutierrez* held "the trial court must consider all relevant evidence bearing on the 'distinctive attributes of youth' discussed in *Miller* and how those attributes 'diminish the penological justifications for imposing the harshest sentences on juvenile offenders.' " (*Gutierrez*, *supra*, 58 Cal.4th at p. 1390.) Because the trial courts in the

13

case on appeal had operated under a governing but erroneous presumption in favor of LWOP, the California Supreme Court could not say with confidence what sentence they would have imposed absent the presumption, and accordingly remanded both cases for resentencing. (*Id*. at p. 1391.)

*Gutierrez* applied the principle that, if a statute is susceptible of two constructions, one of which will render it constitutional and the other of which casts doubt on constitutionality, the court will adopt the construction that, without doing violence to the reasonable meaning of the statutory language, will render the statute constitutionally valid. (*Id*. 58 Cal.4th at p. 1373.) *Gutierrez* observed this canon has been applied to various penal laws, including section 1385. (*Ibid*., citing *Romero*, *supra*, 13 Cal.4th at pp. 509-519.) *Gutierrez* said: "In the context of California's Three Strikes law, . . . we have held that a court's discretionary power to strike prior felony convictions 'in furtherance of justice' (§ 1385) is 'carefully circumscribe[d]' by a preference in the Three Strikes law against striking prior convictions. [Citation to *Carmony*, *supra*, 33 Cal.4th at p. 378.] Because of this presumption, we have said that trial courts' decisions to strike a prior conviction should be ' "extraordinary." ' [Citation.] Similarly here, it is one thing to say that a court, confronting two permissible sentencing options, may impose the harsher sentence if it finds that sentence justified by the circumstances. It is quite another to say that a court, bound by a presumption in favor of the harsher sentence, must impose that sentence unless it finds good reasons not to do so. When the choice between two sentences must be made by weighing intangible factors, a presumption in favor of one sentence can be decisive in many cases." (*Gutierrez*, *supra*, 58 Cal.4th at p. 1382.)

Here, as in *Gutierrez*, a presumption in favor of three strikes sentencing creates problems of constitutionality as applied to juvenile offenders. In contrast to section 1385 and *Romero*, in a cruel/unusual punishment analysis, "*Miller* . . . did more than require a sentencer to consider a juvenile offender's youth before imposing life without parole; it established that the penological justifications for life without parole collapse in light of

14

'the distinctive attributes of youth.' [Citation.] Even if a court considers a child's age before sentencing him or her to a lifetime in prison, that sentence still violates the Eighth Amendment for a child whose crime reflects ' "unfortunate yet transient immaturity." ' [Citation.] Because *Miller* determined that sentencing a child to life without parole is excessive for all but ' "the rare juvenile offender whose crime reflects irreparable corruption," ' [citation], it rendered life without parole an unconstitutional penalty for 'a class of defendants because of their status' -- that is, juvenile offenders whose crimes reflect the transient immaturity of youth. [Citation.]" (*Montgomery*, *supra*, 193 L.Ed.2d at pp. 619-620.)

The People argue the trial court did find irreparable corruption, by stating there was no evidence of a willingness to change. However, the court did not find that defendant's present unwillingness to change reflected irreparable corruption, as opposed to the transient immaturity of youth.

The California Supreme Court currently has under review the question whether the record must show an express determination of irreparable corruption before imposing LWOP, or whether it suffices simply to show the trial court gave due consideration to the defendant's youth and attendant characteristics. (*People v. Padilla* (2016) 4 Cal.App.5th 656, review granted Jan. 25, 2017, S239454.) *Padilla* held "In view of *Montgomery* [which clarified that *Miller* set forth a substantive rule], the trial court must assess the *Miller* factors with an eye to making an express determination whether the juvenile offender's crime reflects permanent incorrigibility arising from irreparable corruption." (*Padilla,* at p. 673, review granted.) *Padilla, supra*, at pages 664-665, 673 (review granted) concluded *Montgomery* thus vitiated the pre-*Montgomery* case of *People v. Palafox* (2014) 231 Cal.App.4th 68, which held that, because the potential for rehabilitation was speculative at the time of sentencing, the record need not show an express determination by the trial court, but only that the trial court thoughtfully weighed the *Miller* factors. (*Palafox,* at pp. 90-92.)

15

Here, even assuming for the sake of argument that the trial court was not required to make an express determination as to whether defendant's present unwillingness to change reflected irreparable corruption, as opposed to the transient immaturity of youth, the record is unclear whether the trial court -- which lacked the benefit of the analysis of *Montgomery* and *Gutierrez* -- properly weighed the *Miller* factors in deciding not to strike the prior conviction under section 1385.

Thus, the judge said, "[w]hat I know today" is that defendant was not showing willingness to participate in rehabilitation programs, and "there is nothing that gives me much hope about Mr. Carter. If there was just something in his background, a glimmer that suggested to me he wanted to change." The court also said, "I think he has the ability to change" and "I hope you [defendant] see [the prospect of future legislation for shortened sentence] as an incentive to turn your life around."

While the potential for rehabilitation necessarily involves some speculation, here it appears the trial court considered significant defendant's current unwillingness to change at the time of sentencing -- but without considering whether defendant's current unwillingness to change might be the product of transient immaturity, as opposed to permanent incorrigibility arising from irreparable corruption.

Thus, while not expressly saying so, the trial court certainly knew the law relating to *Romero* decisions and it is reasonable to expect the trial court felt bound by the presumption in favor of three-strikes sentencing and against the granting of *Romero* requests. In accordance with *Gutierrez* and the other decisions set forth above on the issue of the constitutionality of sentencing decisions where the defendant was under the age of 18 when he committed his crimes, the sentence for this 17-year-old murderer had to be selected with no presumption in favor of LWOP or its functional equivalent, and with consideration of the *Miller* factors.

Because the trial court did not have the benefit of *Gutierrez* or *Montgomery* when it sentenced defendant, and because the trial court necessarily considered the presumption

16

in favor of three-strikes sentencing, we conclude remand is appropriate for the trial court to reconsider sentencing under Eighth Amendment principles without any presumption in favor of three-strikes sentencing. We emphasize the trial court retains discretion whether to strike the prior conviction. (*People v. Orabuena* (2004) 116 Cal.App.4th 84, 95 [court should not interpret section 1385 as eliminating discretionary power absent clear legislative direction to that effect].) We express no view as to the outcome on remand.

IV

*Abstract of Judgment*

Although we are vacating the sentence, we note for the benefit of any resentencing after remand that defendant identifies three errors in the abstract of judgment, and the People properly concede the errors.

First, although the trial court imposed a concurrent, determinate two-year term for Count 2 felon in possession of a firearm, the court listed count 2 on the indeterminate term abstract of judgment, with no term designated, rather than on a separate determinate-term abstract.

Second, line 6b of the abstract incorrectly shows the 25-years-to-life firearm enhancement as a sentence on Count 1 (murder), while line 2 incorrectly states "1" as "time imposed" for the enhancement. The abstract should show the enhancement sentence on line 2, not line 6.

Third, line 5 of the abstract (life with possibility of parole) is checked but should not be. Line 6a is checked, showing "15 years to life" with the notation "1x2=30." Line 6a should not be checked. Instead, line 6c should be checked and an entry made to show 30 years to life on Count 1.

On remand, the trial court shall consider these points if it prepares a new abstract of judgment.

17

## DISPOSITION

The sentence is vacated and the conviction is conditionally reversed. We remand to the trial court with directions to transfer the case to the juvenile court for a transfer hearing to determine if the case would have been transferred to adult criminal court had the case originally been filed in juvenile court (Welf. & Inst. Code, § 707) pursuant to *Lara, supra*, 4 Cal.5th 299, which held Proposition 57 retroactive.

If the juvenile court determines it would not have transferred defendant to criminal court, the juvenile court shall treat defendant's convictions as juvenile adjudications and impose an appropriate disposition.

If the juvenile court determines it would have transferred defendant to criminal court, the case shall be transferred to criminal court, which shall reinstate defendant's convictions but conduct a resentencing hearing on the vacated sentence, considering the distinctive attributes of youth in accordance with this opinion. At the resentencing hearing, defendant may ask the trial court to exercise its discretion to strike the section 12022.53 gun enhancement pursuant to Senate Bill No. 620 (§ 12022.53, subd. (h)), which took effect January 1, 2018, and which we held retroactive in *People v. Woods, supra*, 19 Cal.App.5th 1080.

If the conviction is reinstated, the trial court after the resentencing hearing shall prepare a new abstract of judgment, correcting if necessary the errors we discussed, and forward it to the Department of Corrections and Rehabilitation.


          HULL          , Acting P. J.


We concur:


       BUTZ         , J.


       MURRAY      , J.