Filed 3/16/21  P. v. Scott CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E072974 |
| v. | (Super.Ct.No. FWV07023) |
| BYRON LEROY SCOTT, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Michael A. Smith, Judge.  Affirmed

Kimberly J. Grove, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Daniel Rogers and Christopher P. Beesley, Deputy Attorneys General, for Plaintiff and Respondent.

1

In 1996, defendant Byron Scott was sentenced to two terms of life without possibility of parole (LWOP) along with determinate terms, following verdicts in two counts of first degree murder with special circumstances (Pen. Code,[1] §§ 187, 190.2, subds. (a)(3) & (17)), and one count each of residential burglary (§ 459), residential robbery (§ 411), and attempted forcible rape (§§ 664/261, subd. (a)(2)), for crimes committed when he was 17.  In 2013, defendant filed a petition to recall the sentence pursuant to the provisions of section 1170, former subdivision (d)(2) (now § 1170, subd. (d)(2)(A)(i)), and eventually the trial court conducted a new sentencing hearing.  At resentencing, the LWOP sentences were re-imposed, and defendant appeals from that resentencing.

On appeal, defendant argues that a new resentencing is required because the court misunderstood the scope of its discretion and reimposed the LWOP terms without properly considering the factors relating to his youth as required by *Miller v. Alabama* (2012) 567 U.S. 460 [132 S.Ct. 2455, 183 L.Ed. 2d 407] (*Miller*), made fully retroactive pursuant to *Montgomery v. Louisiana* (2016) 577 U.S. 190 [136 S.Ct. 718, 193 L.Ed. 2d 599] (*Montgomery*).  Defendant also argues that the sentencing court failed to make requisite findings that defendant was irreparably corrupt or permanently incorrigible as required pursuant to *Montgomery,* such that reimposition of LWOP sentences constituted an abuse of discretion.  We affirm.

---

[1]  All further statutory references are to the Penal Code, unless otherwise indicated.

2

We take the following facts about the crime and initial trial from our original

opinion, *People v. Scott* (Nov. 26, 1997, E018728) [nonpub. opn.] at pages 2-4:

"The evidence established that defendant, age 17, ran away from home in

December 1994.  Defendant prevailed on a high school acquaintance to let him stay with

her family in Alta Loma.  The father of the family testified that, after a week, he became

concerned about his legal responsibilities because defendant was still a minor, and

defendant was reclusive and stayed out late.  The father asked defendant to leave, and

gave him a week to move.  Defendant appeared unhappy with the decision, but he was

not antagonistic or hostile.  Defendant then moved out.

"On January 16, 1995, defendant told friends that he was going to get revenge on

the family by robbing them, raping the daughter and stabbing the mother.  On January 17,

1995, defendant carried out his plan.  He returned to the home around 1:30 in the

afternoon and apparently entered through an unlocked sliding glass door.  The daughter

returned home from school between 3:30 and 4:00 p.m.

"According to his confession, defendant got into an argument with the daughter

which turned into a fight.  Defendant then choked her into unconsciousness.  At some

point she died of asphyxia due both to manual strangulation and suffocation from a gag.

"After the victim was unconscious, defendant gagged her and tied her spread eagle

to the bed.  He cut away her clothes and underwear and removed her tampon.  His erect

penis was within an inch and half of her vagina when he decided not to rape her. He then hid himself in the next room until 10:30 p.m.

"The mother was last seen alive at 5:50 p.m. when she picked up her dog from the veterinarian. According to defendant, she arrived home and stayed downstairs, working on her computer. The mother came upstairs, entered the daughter's room and saw her naked dead daughter tied to the bed. As she stood there, defendant attacked her from behind with a knife. He stabbed her 39 times, cutting his own hand in the process. It was stipulated that defendant's blood was found on the mother's nightgown.

"Defendant then took a stereo and a number of other items from the house, packed them in the victim's car and drove away. He eventually drove to a hospital for treatment. He was subsequently arrested and the car was recovered from the hospital parking lot.

"The father was on a business trip at the time of the killings. He became concerned when he could not reach his family and asked the mother's coworkers to investigate. They found the bodies on January 20th." (*People v. Scott*, *supra*, E018728, pp. 1-2.)

The following additional facts are taken from our opinion in a subsequent appeal (*People v. Scott* (Nov. 14, 2017, E066467) [nonpub. opn.] pp. 4-5):

"On March 27, 2013, approximately 17 years after beginning to serve his sentence, defendant filed a petition with the superior court to recall his sentence pursuant to section 1170, former subdivision (d)(2). That provision then stated, in relevant part: 'When a defendant who was under 18 years of age at the time of the commission of the

4

offense for which the defendant was sentenced to imprisonment for life without the possibility of parole has served at least 15 years of that sentence, the defendant may submit to the sentencing court a petition for recall and resentencing.' (§ 1170, former subd. (d)(2)(A)(i).)

"However, the superior court treated defendant's petition as if it were one to recall a sentence under the 'Three Strikes' law. (§ 1170.126.) The court denied the petition, noting first that defendant was not sentenced under the Three Strikes law, and second that he would have been ineligible for resentencing under section 1170.126 because his current offenses include two counts of murder.

"Defendant appealed and, in an opinion filed March 7, 2014, this Court reversed the superior court's order with directions to properly exercise its discretion under section 1170, subdivision (d)(2), and the relevant criteria stated therein.

"The superior court reappointed the public defender. The matter was continued a number of times. On March 20, 2015, the superior court granted defendant in propria persona status. Defendant filed several motions and other pleadings in support of resentencing. On May 14, 2015, the People filed its opposition. On June 5, 2015, the court denied the petition after determining defendant was not entitled to have his sentence recalled and a resentencing hearing scheduled. Specifically, the court found defendant did not make the required showings of remorse and actions of rehabilitation by a preponderance of the evidence.

"On August 19, 2015, defendant filed a notice of appeal.  On July 22, 2016, this Court ordered the notice of appeal be construed to have been timely filed.  [¶] . . . [¶]

"[On November 14, 2017, we remanded the matter] to the superior court with directions to determine whether defendant was entitled to a hearing to decide whether he should be resentenced to a lesser term than life without parole." (*People v. Scott,* E066467*,* [nonpub opn.] pp. 4-5, 8.)

Prior to the hearing on defendant's petition to recall the sentence (§ 1170, subd. (d)(2)), the parties submitted arguments in favor of and against recall and reimposition of the LWOP sentences.  Defendant submitted a mitigation report, which included an analysis of *Miller* factors, as well as documentation on which the sentencing consultant relied, and urged the court to recall the LWOP sentences.

On October 26, 2018, the trial court concluded defendant met the criteria under section 1170, subdivision (d)(2), recalled the sentence and set a hearing for resentencing.

In support of resentencing, defendant urged the court to consider the sentencing mitigation report, which included defendant's social history, educational records, and records of defendant's achievements while incarcerated.  The People opposed defendant's petition, pointing out that much of the information about defendant's family circumstances were fabricated, that the LWOP terms were not imposed based on a presumption that LWOP should be an automatic sentence, but, rather, were imposed as a discretionary exercise after considering defendant's youth and attendant characteristics, such that reimposition of the two LWOP terms was warranted.

6

The trial court conducted the resentencing hearing on May 31, 2019, at which defendant argued he should be resentenced to a term of 25 years-to-life. Defendant argued that a "sentence of LWOP under *Miller* and *Graham v. Florida* (2010) 560 U.S. 48 [130 S.Ct. 2011, 176 L.Ed. 2d 825] (*Graham*) is only appropriate if the defendant was beyond redemption, irreparably corrupt, and unfit to ever reenter society." The People responded that defendant's cruelty and depravity in the commission of the murders "show[ed] him to be irreparably corrupt and beyond rehabilitation and redemption." The trial court considered the *Miller* factors, and observed that the decisional authorities did not completely prohibit sentences of LWOP for juveniles. In reviewing the *Miller* factors, the court was aware that the Supreme Court had indicated there had to be strong, specific factors to demonstrate irreparable corruption to warrant an LWOP sentence.

After weighing the aggravating and mitigating facts, the trial court observed the offense to be particularly aggravated and chilling, and the defendant's conduct showed a significantly higher level of callousness and cruelty. It also considered that defendant had begun to do things to show true remorse and the possibility of rehabilitation, but that he had not yet shown it. The trial court concluded by finding "that the totality of those circumstances due [*sic*] indicate an irreparable corruption rather than transient immaturity of youth" and re-imposed the two LWOP sentences. Defendant timely appeals.

## DISCUSSION

On appeal, defendant argues the trial court misunderstood the scope of its discretion in re-imposing the two LWOP terms, seeking reversal of the sentence and a

7

remand for resentencing. Specifically, he argues that the trial court failed to determine whether defendant "is among the 'rarest of juvenile[s]' whose crime reflects 'permanent incorrigibility,' and not 'transient immaturity.'" Although he addresses a significant portion of his brief to discussion of the Eighth Amendment principles underlying *Miller, Graham* and *Montgomery,* his real complaint is that the resentencing court abused its discretion by failing to make an express finding that defendant is irreparably corrupt or permanently incorrigible. He is in error.

The People argue that any cruel and unusual punishment challenge to the sentence is moot in light of the enactment of the amended provisions of section 3051, and, alternatively, that the trial court properly considered the *Miller/* (*People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*)) factors in resentencing the defendant. We agree the issue is moot, but we find the trial court considered the proper *Miller* criteria in light of *Montgomery* and made the appropriate findings.

1.    *The Trial Court Duly Made Findings Required by Miller and Montgomery.*

Defendant's main complaint is that the resentencing court failed to expressly find that defendant was "irreparably corrupt" or "permanently incorrigible," rendering his sentence constitutionally infirm as required by *Miller* and *Montgomery*. We disagree.

*Miller* was declared a substantive rule, entitled to retroactive application to cases that were final on appeal in *Montgomery.* (*Montgomery, supra,* 577 U.S. 190 [136 S.Ct. 718, 734, 193 L.Ed. 2d 599].) "Although *Miller* did not foreclose a sentencer's ability to impose life without parole on a juvenile, the Court explained that a lifetime in prison is a

8

disproportionate sentence for all but the rarest of children, those whose crimes reflect "'irreparable corruption.'"" (*Montgomery, supra,* 136 S.Ct. at p. 726, citing *Miller, supra,* 567 U.S. at pp. 479-480, quoting *Roper v. Simmons* (2005) 543 U.S. 551, 573 [125 S.Ct. 1183, 161 L.Ed. 2d 1].) California courts have interpreted this language as requiring an express determination whether the juvenile offender's crime reflects permanent incorrigibility arising from irreparable corruption. (*People v. Padilla* (2016) 4 Cal.App.5th 656, 673 [review granted Jan. 25, 2017, S239454].)

In *Padilla,* the California Supreme Court granted review on its own motion to determine whether "*Montgomery v. Louisiana* (2016) 577 U.S. ___ [136 S.Ct. 718, 193 L.Ed.2d 599,], clarify[ied] that *Miller v. Alabama* (2012) 567 U.S. 460 [132 S.Ct. 2455, 183 L.Ed.2d 407,] (*Miller*) bans a sentence of life without the possibility of parole on a specific class of juvenile offenders whose crimes reflect the transient immaturity of youth, thereby requiring that trial courts determine that the crime reflects 'irreparable corruption resulting in permanent incorrigibility' before imposing life without parole," or whether a trial court complies "with the constitutional mandates of *Miller* by giving due consideration to the offender's youth and attendant circumstances in exercising its sentencing discretion under Penal Code section 190.5, subdivision (b)[.]" (*People v. Padilla* (2017) 212 Cal.Rptr.3d 620 [387 P.3d 741].) Subsequently, review was dismissed as moot in light of Senate Bill No. 394, signed into law on October 11, 2017. (*People v. Padilla* (2018) 234 Cal.Rptr.3d 75 [419 P.3d 535].)

A more recent case relied on the procedural history of *Padilla* as a sign that findings of irreparable corruption and permanent incorrigibility are prerequisite to the lawful imposition of an LWOP sentence in light of *Miller.* (See *People v. Carter* (2018) 26 Cal.App.5th 985, 999.)

In the present case, the resentencing court considered the *Miller* factors to determine whether defendant was irreparably corrupt, and expressly found that "the totality of those circumstances due[2] [*sic*] indicate an irreparable corruption rather than transient immaturity of youth."

The mandate of *Montgomery* was duly satisfied by the court's findings of irreparable corruption after considering the circumstances of the crime as well as defendant's youth and immaturity, as required by *Miller* and *Montgomery.* The court was well aware of the scope of its discretion and made the requisite findings. There was no error.

2.      *The Amended Provisions of Section 3051 Render Defendant's Miller/Montgomery Constitutional Claims Moot.*

In the trial court, all parties recognized that the amendments to section 3051, subdivision (b)(4), render persons who were under the age of 18 at the time of the controlling offense, who are sentenced to a term of LWOP, eligible for parole. On appeal, defendant argues that the lack of express finding that he is irreparably corrupt

_____

[2] We assume this is a typographical error and that the court reporter mis-transcribed the word "do" by using its homonym, "due." Otherwise, the sentence makes little sense.

10

renders his resentencing invalid, as failing to conform with *Miller, Graham* and *Montgomery.* As we explained in the previous section, the resentencing court did make the requisite findings. But, as the People pointed out, the issue is moot in light of the current provisions of section 3051 because defendant will automatically become eligible for parole.

As relevant here, section 3051 provides in part: "A person who was convicted of a controlling offense that was committed before the person had attained 18 years of age and for which the sentence is life without the possibility of parole shall be eligible for release on parole at a youth offender parole hearing during the person's 25th year of incarceration. The youth parole eligible date for a person eligible for a youth offender parole hearing under this paragraph shall be the first day of the person's 25th year of incarceration." (§ 3051, subd. (b)(4).)

Senate Bill No. 394, by which section 3051 was amended, rendered the defendants' constitutional claim under *Miller* moot. (*Franklin, supra,* 63 Cal.4th at pp. 279-280.) "'By simply transforming the affected sentences to life with parole terms, [section 3051] avoid[s] the *Miller* issues associated with the earlier sentences.'" (*In re Cook* (2019) 7 Cal.5th 439, 449, quoting *In re Kirchner* (2017) 2 Cal.5th 1040, 1054.) "By affording those individuals a meaningful opportunity for release, the Legislature has effectively mooted any claim that imposition of life without parole on a juvenile offender violates the Eighth Amendment." (*People v. Ochoa* (2020) 53 Cal.App.5th 841, 850, citing *Franklin, supra*, 63 Cal.4th at pp. 279–280.)

11

We concur with these holdings and hold that to the extent defendant asserts the reimposition of two LWOP sentences violates the Eighth Amendment pursuant to *Miller,* that claim is moot. However, the abuse of discretion claim is not rendered moot by the statutory amendment.

3. *The Trial Court Did Not Abuse Its Discretion in Reimposing LWOP Terms After Duly Considering Defendant's Youth and Other Miller Criteria.*

Defendant argues the reimposition of LWOP sentences constituted an abuse of discretion in the absence of certain findings, and because the court did not appreciate the scope of its discretion as requiring such findings. We disagree.

Section 190.5 governs the imposition of judgement regarding persons under the age of 18. Subdivision (b) provides that "[t]he penalty for a defendant found guilty of murder in the first degree, in any case in which one or more special circumstances enumerated in Section 190.2 or 190.25 has been found to be true under Section 190.4, who was 16 years of age or older and under the age of 18 years at the time of the commission of the crime, shall be confinement in the state prison for life without the possibility of parole or, at the discretion of the court, 25 years to life."

Section 190.5, subdivision (b), does not establish a presumption in favor of life without parole. (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1371.) Thus, on its face, the statute authorizing LWOP for juveniles does not violate the prohibition of *Miller* and *Montgomery* against mandatory LWOP terms and section 190.5, subdivision (b), because "properly construed, [it] confers discretion on a trial court to sentence a 16- or 17-year-

old juvenile convicted of special circumstance murder to life without parole or to 25 years to life, with no presumption in favor of life without parole.  (*Gutierrez, supra,* 58 Cal.4th at p. 1360.)  What remains is a claim of abuse of discretion.

Defendant's main challenge to the exercise of the sentencing court's decision to reimpose the LWOP terms is the argument that the court failed to find defendant was irreparably corrupt nor made a determination of permanent incorrigibility.  However, as pointed out above, this is inaccurate.  The resentencing court made an express finding "that the totality of those circumstances [do] [3] indicate an irreparable corruption rather than transient immaturity of youth."  Defendant also argues that a court must make another required finding:  that before imposing LWOP sentences on a juvenile, a court must also find the defendant to be among the "rarest of juvenile[s]."  We disagree.

We agree with defendant's concern that courts should only impose LWOP terms on "the rarest of juvenile offenders."  However, neither *Miller* nor *Montgomery* require that a court expressly make such a finding; instead, we interpret those cases as requiring findings of irreparable corruption and/or permanent incorrigibility so as to ensure that only the "rarest of juveniles" receive an LWOP term.  A court can make a determination of the corruption and incorrigibility factors after reviewing the facts of the offense, and the evidence presented in aggravation or mitigation.  But it would be impracticable to require trial courts to make the additional finding suggested by defendant because it

---

**3**  Again, although the reporter's transcript states that "the totality of the circumstance *due* indicate irreparable corruption," we assume the court actually said "do" and that it was mis-transcribed.

would require an ongoing mathematical computation, in real time, of the percentage of juveniles who have been convicted of first degree murder with special circumstances who were sentenced to LWOP.

Additionally, there is no guidance from the Supreme Court as to what "rarest" means, what percentage of juvenile murderers with special circumstances findings falls within or exceeds "rarest," or how a sentencing court should determine the relative rarity of the occurrence of LWOP terms for juveniles. Findings of irreparable corruption or permanent incorrigibility will necessarily limit imposition of LWOP sentences to only those rare juvenile offenders.

We now turn to the question of whether the court abused its discretion in selecting LWOP as the punishment for defendant's crimes, after considering all the factors surrounding the offense and the offender. In reviewing a court's exercise of discretion in sentencing, we are guided by well-established principles: A court's exercise of discretion will not be disturbed on appeal absent a showing that the court acted in an arbitrary, capricious, or patently absurd way, resulting in a manifest miscarriage of justice. (*People v. Jordan* (1986) 42 Cal.3d 308, 316.) We are guided by two fundamental precepts. First, ""'[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review."' [Citation.] Second, a "'decision will not be reversed merely

14

because reasonable people might disagree.  'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.'"'" (*People v. Blackwell* (2016) 3 Cal.App.5th 166, 199-200, quoting *People v. Carmony* (2004) 33 Cal.4th 367, 376–377.)

There is no longer a presumption favoring imposition of an LWOP term, and no particular factor, relevant to the decision whether to impose LWOP on a juvenile who has committed murder, predominates under the law. (*Blackwell, supra,* 3 Cal.App.5th at p. 200.)  So long "as a trial court gives due consideration to an offender's youth and attendant characteristics, as required by *Miller*[, *supra*,] it may, in exercising its discretion under . . . section 190.5, subdivision (b), give such weight to the relevant factors as it reasonably determines is appropriate under all the circumstances of the case." (*People v. Palafox* (2014) 231 Cal.App.4th 68, 73.)

Here, the trial court carefully catalogued a myriad of factors in aggravation and mitigation, including the extreme cruelty involved in the double murder, which included lying in wait for several hours after killing the daughter before attacking the mother when she entered the daughter's room to check on her.  The court recounted how defendant had premeditated the crime, discussing his plan in advance of the event, and then carrying out that plan.  The court also considered defendant's age, his social history and his conduct in prison during the intervening years as mitigation, along with the *Miller* factors regarding defendant's youth and immaturity.

Nevertheless, in weighing the aggravating factors against the mitigating factors, including the *Miller* youth factors, the court concluded that the totality of those circumstances did indicate an irreparable corruption rather than transient immaturity of youth, going on to say, "And after weighing all of the circumstances, the court finds that the appropriate penalty remains to be life in prison without the possibility of parole."

On this record, we find no abuse of discretion.

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.


We concur:

McKINSTER
J.

CODRINGTON
J.

16