Filed 3/4/26  P. v. Williams CA4/2
See Concurring Opinion

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

THE PEOPLE,

    Plaintiff and Respondent,

v.

LATASHA DIANE WILLIAMS,

    Defendant and Appellant.

E084643

(Super.Ct.No. FWV023670)

OPINION

APPEAL from the Superior Court of San Bernardino County.  Jon D. Ferguson, Judge.  Affirmed.

Law Offices of Bess Stiffelman, Bess Stiffelman and Connor Sakati for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal and Randall D. Einhorn, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant Latasha Diane Williams filed a petition for recall and resentencing pursuant to Penal Code section 1170, subdivision (d)(1),[1] which the trial court denied. On appeal, defendant contends that because her sentence was the functional equivalent of life without the possibility of parole (LWOP), she is entitled to recall and resentencing. The People concede that the court erred in denying defendant's petition. We affirm.

PROCEDURAL BACKGROUND[2]

On July 18, 2003, a jury found defendant guilty of three counts of attempted voluntary manslaughter (§§ 664, 192, subd. (a), counts 1-3), three counts of assault with a firearm (§ 245, subd. (a)(2), counts 4-6), and three counts of discharging a firearm at another person from a motor vehicle (§ 12034, subd. (c), counts 7-9). The jury additionally found true allegations that defendant personally used a firearm in all the offenses (§ 12022.5, subd. (a)(1)); personally and intentionally discharged a firearm in counts 1 through 3 (§ 12022.53, subd. (c)); personally inflicted great bodily injury in counts 1, 2, 4, and 5 (§ 12022.7, subd. (a)); and personally and intentionally discharged a firearm causing great bodily injury in counts 7 and 8 (§ 12022.53, subd. (d)). The court sentenced defendant to a term of imprisonment of 61 years eight months to life. (*People*

---

[1] All further statutory references will be to the Penal Code.
Defendant, born in November 1983, was 17 years old on the date she committed the offenses, August 24, 2001, for which the jury convicted her.

[2] We omit a recitation of the facts because they are irrelevant to the issues raised on appeal.

*v. Williams* (Aug. 9, 2006, E037477) [nonpub. opn.] (*Williams I*); *People v. Williams* (Nov. 22, 2023, E081450) [nonpub. opn.] (*Williams II*).)

Defendant appealed. This court struck all the enhancements under section 12022.53, subdivisions (b), (c), and/or (e), and vacated the stay of the enhancement under section 12022.5, subdivision (a)(1) on count 9. This court otherwise affirmed the judgment as modified. (*Williams I*, *supra*, E037477.) The sentencing court thereafter resentenced defendant to a term of imprisonment of 59 years eight months to life.

On July 17, 2023, defendant filed a form petition for recall and resentencing pursuant to section 1170, subdivision (d)(1) and *People v. Heard* (2022) 83 Cal.App.5th 608 (*Heard*), in which she contended she was remorseful for her actions, had no juvenile adjudications for assault or other violent felonies, had committed the offenses with at least one adult codefendant, and related her efforts toward rehabilitation. On November 13, 2023, defense counsel filed a brief contending defendant's sentence was the functional equivalent of LWOP; therefore, defendant was entitled to resentencing.

On March 14, 2024, the People filed opposition to defendant's petition. The People maintained that defendant had failed her burden to prove her sentence was the functional equivalent of LWOP, that defendant was not serving the functional equivalent of LWOP, and that *Heard* was wrongly decided.

At the hearing on defendant's petition on August 28, 2024, the court noted that the courts in "Heard and Sorto[3] both felt that the sentences that the defendants in those

---

[3] *People v. Sorto* (2024) 104 Cal.App.5th 435 (*Sorto*).

cases received violated equal protection, and that they were not explicitly life-without-parole sentences as required under the language of [section] 1170[, subdivision ](d)."

Defense counsel argued that because courts had determined that the sentences in *Heard* (103 years to life), *People v. Contreras* (2018) 4 Cal.5th 349 (50 and 58 years to life),[4] and *People v. Carter* (2018) 26 Cal.App.5th 985 (55 years to life),[5] were the functional equivalent of LWOP, defendant's sentence was likewise the functional equivalent of LWOP. Thus, defendant was entitled to recall and resentencing pursuant to section 1170, subdivision (d) (1170(d)).

The People noted that pursuant to *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*), defendant was entitled to a youthful parole hearing in February 2025, and a suitability hearing in August 2025. The People further observed that, in consideration of the additional educational credits defendant had received, she would be only 57 years old when eligible for parole pursuant to her sentence: "When we look at her life expectancy, she's expected to live to around 79 years old. So she has almost two decades where she can live a meaningful life. So I don't think that she's been sentenced to the functional equivalent of life without parole."

The People also disagreed with *Heard*: "I think that we need to look at the fact that she actually does have a youthful parole hearing in less than a year, and I think it's

---

[4] In *Contreras*, both defendants were convicted under section 667.61, which rendered them ineligible for youthful parole under section 3051.

[5] *Carter* involved a claim that the defendant's sentence violated the Eighth Amendment proscription against cruel and unusual punishment, not the claim here that differential treatment of defendant's sentence violated her right to equal protection.

hard to argue that she is sentenced to the functional equivalent of life without parole when she's going to have that parole hearing at 41 years old."

Defense counsel replied, "As far as [defendant] getting her parole hearing, or youthful offender hearing, she's not guaranteed that it will be granted. And then as far as the conduct credits are concerned, too, they can be taken away at any time. If she does anything in the slightest negative, they could take all that away, and she could be there for the whole, entire duration of the time."

The People responded, "The same would be true if she was sentenced to seven years to life, right? That she would be—there's no guarantee that she would ultimately be paroled. So we don't look at whether or not she is actually paroled; we look at whether or not she actually has a parole hearing date, and she actually does have a parole hearing date next year."

The court observed that, "in Franklin, the defendant was sentenced to 50 years to life, and the California Supreme Court held that because Section 3051 entitles Franklin to a youth offender parole hearing during his 25th year of incarceration, his sentence, quote, 'is neither LWOP nor its functional equivalent,' thus gives no rise to any, quote, 'Miller[6] claim.'" "Under the Heard analysis, what Heard addressed was the right to a hearing under 1170(d), and the emphasis was whether there was an equal protection concern in the sense that defendants sentenced to the functional equivalent of LWOP were not entitled to a hearing under 1170(d)."

---

6 *Miller v. Alabama* (2012) 567 U.S. 460.

The court continued, "the sentence that was originally imposed that the Heard case analyzes for purposes of whether there should be a rational basis under the equal protection analysis, whether there's a rational basis to distinguish those sentences and preclude Heard from eligibility under 1170(d), they looked at the sentence that he received, which was 103 years. He had to serve 103 years before becoming parole-eligible. Such a sentence constitutes a de facto life-without-parole sentence, . . . relying on Caballero[7] who received a sentence where he would . . . not become parole-eligible for more than 100 years." "Similarly, in the most recent case, Sorto, as I recall the sentence that was originally imposed was over 130 years."

Defendant "received less than that, 25 to life [*sic*]. But again, she's going to receive a hearing in short order under [section] 3051 because unlike the defendants in Contreras, she was not precluded by her life crime from eligibility under [section] 3051, so she is going to receive that hearing."

"And . . . under the equal protection cases . . . Heard and . . . Sorto, they were . . . clearly sentences that would have had no opportunity for parole whatsoever, given the length of years; that is not the case here. So for those reasons . . . I'm going to deny the motion at this time." The court reasoned that, as a matter of statutory interpretation under section 1170, subdivision (d)(1), there was no equal protection concern in the instant case "in the same way there was in the sentence imposed in Sorto and Heard. [¶] So having said that, the petition is denied."

---

7 *People v. Caballero* (2012) 55 Cal.4th 262.

6

## II. DISCUSSION

Defendant contends she is entitled to recall of her sentence and resentencing pursuant to section 1170(d) because her sentence of 59 years eight months to life is the functional equivalent of LWOP. She maintains that equal protection concerns require that she be provided with the same opportunities for relief as those who received sentences of LWOP. Defendant further avers that her "eligibility for a youth offender parole [hearing] does not moot her right to recall and resentencing under section 1170(d)(1)."

The People concede that the court erred in denying defendant's petition because she is serving a sentence that is the functional equivalent of LWOP. We disagree.

Section 1170(d) "created 'a procedural mechanism for resentencing of defendants who were under the age of 18 at the time of the commission of their offenses and who were given [LWOP] sentences.' [Citation.] Under this provision, '[w]hen a defendant who was under 18 years of age at the time of the commission of the offense for which the defendant was sentenced to imprisonment for life without the possibility of parole has been incarcerated for at least 15 years, the defendant may submit to the sentencing court a petition for recall and resentencing.' [Citation.]" (*Heard*, *supra*, 83 Cal.App.5th at pp. 617-618.)

"In the petition, 'the defendant must describe his or her remorse, relate his or her work toward rehabilitation, and state that a qualifying circumstance is true.' [Citation.] The qualifying circumstances are (1) the defendant 'was convicted pursuant to felony murder or aiding and abetting murder provisions of law'; (2) the defendant does not have

7

juvenile felony adjudications for assault or other violent felonies prior to the offense that resulted in the sentence being considered for recall; (3) the defendant committed the offense with at least one adult codefendant; or (4) the defendant has performed acts that tend to indicate rehabilitation or the potential for rehabilitation. [Citation.] 'If the court finds by a preponderance of the evidence that one or more of the qualifying circumstances in the petition are true, the court must recall the defendant's sentence and hold a hearing to resentence the defendant.' [Citation.]" (*Heard*, *supra*, 83 Cal.App.5th at p. 618.)

"At the resentencing hearing, the court is permitted to consider factors enumerated in the statute, along with '"any other criteria that the court deems relevant to its decision."' [Citation.] 'Upon conducting this assessment, "[t]he court shall have the discretion to resentence the defendant in the same manner as if the defendant had not previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence."' [Citation.]" (*Heard*, *supra*, 83 Cal.App.5th at p. 618.)

"[D]enying juvenile offenders sentenced to the functional equivalent of life without parole the opportunity to petition for resentencing under this provision violates the constitutional guarantee of equal protection of the laws." (*Heard*, *supra*, 83 Cal.App.5th at p. 622.) "The functional equivalent of life without parole results only when a defendant receives multiple sentences for multiple offenses, or an offense plus one or more enhancements, that add up to a lifelong prison commitment with no realistic opportunity for release. [Citations.]" (*Heard*, *supra*, at p. 624 [103 years to life]; accord

8

*Sorto*, *supra*, 104 Cal.App.5th at p. 440 [140 years to life]; *People v. Bagsby* (2024) 106 Cal.App.5th 1040, 1054-1061 [107 years to life]; *People v. Munoz* (2025) 110 Cal.App.5th 499, 513 (*Munoz*) [50 years to life], review granted June 25, 2025, S290828, dis. opn. of Feuer, J.; compare *Munoz*, at pp. 502-503 [50 years to life is not the functional equivalent of LWOP]; *People v. Baldwin* (2025) 113 Cal.App.5th 978, 999 [44 years to life not functional equivalent of LWOP]; *People v. Thompson* (2025) 112 Cal.App.5th 1058, 1081 (*Thompson*), review granted Sept. 24, 2025, S292540 [50 years to life not functional equivalent of LWOP]; *People v. Perez* (2013) 214 Cal.App.4th 49, 57 [parole eligibility at 47 years of age was "by no stretch of the imagination . . . 'functional' or 'de facto' LWOP"].)

"To be sure, line drawing is difficult. A sentence of 50 to life is not the functional equivalent of life without the possibility of parole, but sentences of 88 to life, 103 to life, 107 to life, and 140 to life are. What about 60 to life for a 15-year-old defendant? Or 53 years eight months to life for a 20-year-old defendant? These are tough questions. But they are questions for the Legislature, which in our current system of government has responsibility for addressing such criminological problems by evaluating potential solutions and drawing lines." (*Munoz*, *supra*, 110 Cal.App.5th at p. 510.)

Since *Munoz*, three courts have rejected the *Heard* line of reasoning entirely. In *People v. Ortega* (2025) 111 Cal.App.5th 1252 (*Ortega*), review granted September 17, 2025, S292070, a court summarily denied a section 1170, subdivision (d)(1) petition filed by a 17 year old sentenced to 42 years to life. (*Ortega*, at p. 1256.) On appeal, the court,

9

citing *Franklin*, *supra*, 63 Cal.4th 261, held: "The requirement of a youth offender parole hearing moots a juvenile defendant's constitutional claim that he is serving a sentence that is the functional equivalent of LWOP." (*Ortega*, at p. 1260.) "Here, the trial court sentenced Ortega to life in prison with the possibility of parole after 42 years, which would have made him eligible for parole at age 59. But due to the Legislature's later enactment of section 3051, and its requirement of youth offender parole hearings, Ortega 'is now serving a life sentence that includes a meaningful opportunity for release during his 25th year of incarceration. Such a sentence is neither LWOP nor its functional equivalent.' [Citation] Of course, we are bound by California Supreme Court precedent. [Citation.] Therefore, we need not decide whether Ortega's 42-year-to-life sentence is the functional equivalent of LWOP, and, if so, whether it is unconstitutional, because his claim is moot." (*Id*. at p. 1262.)

"[W]e hold that the trial court properly denied Ortega's section 1170[, subdivision] (d)(1) petition because under the plain and unambiguous language of the statute[,] Ortega was not sentenced to life in prison without the possibility of parole. And we further hold that Ortega's constitutional equal protection claim is moot because he is not serving a sentence that is the functional equivalent of life in prison without the possibility of parole." (*Ortega*, *supra*, 111 Cal.App.5th at p. 1262.) The court "respectfully disagree[d] [with] the appellate court's analysis in *Heard* [because it] cannot be reconciled with the Supreme Court's analysis in *Franklin*." (*Id*. at p. 1264.)

10

"We find that the trial court properly denied Ortega's petition on two grounds. First, under the plain language of the statute, Ortega was not sentenced to life in prison without the possibility of parole. [Citation.] And second, Ortega's equal protection claim is moot because under clear and binding precedent he was not sentenced to a prison term that currently violates the constitution (i.e., a sentence that is the functional equivalent of life in prison without the possibility of parole)." (*Ortega*, *supra*, 111 Cal.App.5th at p. 1265.)

In *People v. Isayev* (2025) 113 Cal.App.5th 1117 (*Isayev*), review granted November 12, 2025, S292860, the court found "defendant is not eligible for relief under section 1170, subdivision (d), because the statute only applies to individuals sentenced to LWOP and defendant is not serving LWOP or its functional equivalent. Although a 50-years-to-life sentence, standing alone, might be functionally equivalent to LWOP [Citation] . . . defendant's sentence is distinguishable because, under section 3051 (the Youth Offender Parole Program), he will be eligible for parole at the age of 42, during his 25th year of incarceration. Thus, the trial court erred in applying *Heard*, . . . because, as a matter of law, defendant's sentence is not the functional equivalent of LWOP." (*Id*. at p. 1127, fn. omitted.)

The court further observed that the prosecution had argued that "even without section 3051 defendant would be eligible for parole at the age of 50 under section 3055 (the Elderly Parole Program), and . . . even if both sections 3051 and 3055 did not apply, defendant could substantially advance his initial parole date by earning good-conduct

credits under applicable Department of Corrections and Rehabilitation regulations. [Citation.]" (*Isayev*, *supra*, 113 Cal.App.5th at p. 1127, fn. 3.)

"We conclude, contrary to *Heard*, that eligibility for resentencing relief under section 1170, subdivision (d), turns on the sentence in effect at the time of the petition, not whatever sentence originally was imposed. Thus, parole eligibility under section 3051 may render a juvenile offender ineligible for relief under section 1170, subdivision (d), because the offender is no longer serving LWOP or its functional equivalent." (*Isayev*, *supra*, 113 Cal.App.5th at p. 1128.)

"In reaching this conclusion, we part ways with *Heard*, *Sorto*, and *Bagsby*, each of which concluded that the availability of a youth offender parole hearing under section 3051 does not render a juvenile offender ineligible for relief under section 1170, subdivision (d)." (*Isayev*, *supra*, 113 Cal.App.5th at p. 1142.) "In our view, the clear intent of section 1170, subdivision (d)(1), is to create a procedure for recall and resentencing of juvenile offenders who *are serving* LWOP sentences. Thus, eligibility for relief depends on the sentence that is in effect at the time the petition is filed. In other words, the defendant is eligible for relief only if the defendant "was sentenced" and is still serving an LWOP term when the petition is filed." (*Id*. at pp. 1143-1144.)

"We therefore agree with *Ortega*, . . . that the retroactive operation of section 3051 on a defendant's sentence is not irrelevant. If the defendant has become eligible for a youth offender parole hearing and, consequently, is no longer serving LWOP or its functional equivalent, the defendant is not eligible to petition for recall and resentencing

12

under section 1170, subdivision (d).  To the extent *Lopez*, *Heard*, *Sorto*, and *Bagsby* reached a contrary conclusion, we disagree with those decisions." (*Isayev*, *supra*, 113 Cal.App.5th at p. 1144.)

"Because section 3051 applies to this sentence, defendant is now entitled to a youth offender parole hearing at the age of 42, during his 25th year of incarceration. [Citation.]  A life sentence with parole eligibility at the age of 42 is not the functional equivalent of LWOP.  [Citation.]  Consequently, even if equal protection principles require section 1170, subdivision (d), relief be extended to offenders sentenced to de facto LWOP terms, the trial court erred by granting defendant's section 1170, subdivision (d), petition because his sentence is not functionally equivalent to LWOP." (*Isayev*, *supra*, 113 Cal.App.5th at p. 1144.)

Finally, most recently, the court in *People v. Lara* (2025) 115 Cal.App.5th 484 (*Lara*) noted, "We acknowledge *People v. Heard*, . . . and the case law which agrees with its holding and rationale.  Court of Appeal opinions, both published and not published have been inconsistent.  We agree with the People that the *Heard* rule has been mooted by the Legislature.  [Citations.]  [¶]  We do not view cases wearing 'horse blinders.'  Here, appellant has been given a parole hearing and so it is plain to see that he is not presently serving the functional equivalent of LWOP.  The issue is moot.  As indicated, 'When the reason for a rule ceases, so should the rule.'  [Citation.]  Phrased otherwise, the reason for the *Heard* rule has ceased and so should the *Heard* rule itself." (*Id*. at pp. 487-488)

Here, the court properly denied defendant's petition. First, defendant's sentence of 59 years eight months to life is not LWOP. Thus, she was not statutorily entitled to relief under section 1170, subdivision (d)(1). (*Ortega, supra*, 111 Cal.App.5th at p. 1262 [The defendant was ineligible for relief "because under the plain and unambiguous language of the statute[, the defendant] was not sentenced to life in prison without the possibility of parole"].)

Second, we agree with the courts in *Ortega*, *Isayev*, and *Lara* that defendant's eligibility for parole after 25 years of incarceration pursuant to section 3051 renders her sentence neither LWOP nor the functional equivalent of LWOP. (*Ortega, supra*, 111 Cal.App.5th at p. 1262; *Isayev, supra*, 113 Cal.App.5th at 1128; *Lara, supra*, 115 Cal.App.5th at p. 488; see *Franklin, supra*, 63 Cal.4th at p. 280 [A defendant who is serving a sentence that includes a meaningful opportunity for release during his 25th year of incarceration is serving neither LWOP nor its functional equivalent].)[8] Here, the court sentenced defendant on February 3, 2005. Thus, at latest, defendant would be entitled to a parole hearing in 2028, when she would be 44 years old.[9] "A life sentence with parole

---

[8] We recognize that *Franklin* concerned a determination of whether a sentence constituted cruel and unusual punishment, rather than whether the sentence violated equal protection as here. Nevertheless, for purposes of whether a defendant seeking resentencing pursuant to section 1170, subdivision (d)(1), is serving the functional equivalent of LWOP, we find that a distinction without a difference.

[9] "If parole is not granted, the board shall set the time for a subsequent youth offender parole hearing in accordance with paragraph (3) of subdivision (b) of Section 3041.5" (§ 3051, subd. (g).) Defendant would thereafter potentially be entitled to a parole hearing as early as three years thereafter, but as late as 15 years thereafter depending on the findings of the parole board. (§ 3041.5, subd. (b) [Parole hearings

*[footnote continued on next page]*

eligibility at the age of [44] is not the functional equivalent of LWOP." (*Isayev*, *supra*, 113 Cal.App.5th at p. 1144.)

Indeed, according to the calculations of the People below,[10] defendant was entitled to a youthful parole hearing in February 2025, and a suitability hearing in August 2025. Thus, defendant may have already had a parole hearing, when she was 41 years old. "A life sentence with parole eligibility at the age of [41] is not the functional equivalent of LWOP." (*Isayev*, *supra*, 113 Cal.App.5th at p. 1144.)

Third, as argued by the People in *Isayev*, we think that defendant's eligibility for parole at the age of 50 under section 3055 likewise renders her sentence neither LWOP nor the functional equivalent of LWOP. (*Isayev*, *supra*, 113 Cal.App.5th at p. 1127, fn. 3.) The "Elderly Parole Program" was established for the purpose "of reviewing the parole suitability of any inmate who is 50 years of age or older and has served a minimum of 20 years of continuous incarceration on the inmate's current sentence, serving either a determinate or indeterminate sentence." (§ 3055, subd. (a).)

Here, defendant will be 50 years old and will have served well over 20 years of incarceration in 2033. Thus, again, "A life sentence with parole eligibility at the age of [50] is not the functional equivalent of LWOP." (*Isayev*, *supra*, 113 Cal.App.5th at

thereafter at three, five, seven, ten, and fifteen years depending on the findings of the parole board].)

[10] At sentencing on February 3, 2005, the court awarded 1446 days of credit or nearly four years of credit. Thus, even assuming defendant earned no further conduct credit, defendant would have reduced her parole eligibility date by approximately four years. (*In re Jenkins* (2010) 50 Cal.4th 1167, 1179 ["[C]redits go towards advancing [defendant's] minimum eligible release date, . . ."].)

p. 1144; see *Munoz*, *supra*, 110 Cal.App.5th at pp. 502-503; *Thompson*, *supra*, 112 Cal.App.5th at p. 1081.)

Fourth, as the People argued below, we think consideration of the credits defendant has and can continue to earn is proper when determining whether her sentence was the functional equivalent of LWOP. (*In re Jenkins*, *supra*, 50 Cal.4th at p. 1179; *Thompson*, *supra*, 112 Cal.App.5th at p. 1080 ["[J]uvenile offenders sentenced to 50 years to life might accrue conduct credits while in prison that would meaningfully shorten their sentences, while a life without parole sentence could not be modified by credits, even if accrued"].)

As noted *ante*, at sentencing on February 3, 2005, the court awarded 1446 days of credit or nearly four years of credit.[11] Thus, even assuming defendant earned no further conduct credit, she would be entitled to a parole hearing after serving approximately 55 years eight months, or when she was 77 years old.

However, as the People below noted, defendant would be entitled to earn good conduct credits, which vary between 20 and 66 percent depending on the effective version of the code, the nature of the defendant's offenses, and the defendant's work while incarcerated. (Cal. Code Regs., tit. 15, § 3043.2, subd. (b).) Defendant would also be entitled to earn additional credits based on her rehabilitative and educational achievements. (Cal. Code Regs., tit. 15, § 3043.3.) In her petition, defendant enumerated

---

[11] When the court resentenced defendant on August 29, 2012, on remand from this court, it did not recalculate defendant's custody credits. (*People v. Buckhalter* (2001) 26 Cal.4th 20, 29 [when calculating credits at a resentencing, court must calculate them up to the date of the resentencing].

numerous rehabilitative and educational achievements.  Thus, defendant's sentence could be reduced anywhere between approximately 12 to 39 years, making her eligible for parole from between 39 to 65 years of age.  Obviously, to the extent defendant could bring her parole eligibility date down to 50 years of age or younger, her sentence would not be the functional equivalent of LWOP.

Fifth and finally, we hold that the confluence of these factors, defendant's eligibility for parole after 25 years of incarceration pursuant to section 3051, defendant's eligibility for subsequent parole hearings if her 25-year hearing is denied, her eligibility for a parole hearing at age 50, and her eligibility for a potentially substantial reduction in the minimum number of years she would have to serve before having a parole hearing pursuant to her potential to earn credits, reflect that defendant is not serving the functional equivalent of LWOP, and, is therefore, not eligible for recall and resentencing pursuant to section 1170, subdivision (d)(1).  The court properly denied her petition.

## III.  DISPOSITION

The order denying defendant's petition is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
Acting P. J.

I concur:


CODRINGTON
J.

[*People v. Williams*, E084643]

RAPHAEL, J., concurring.

Defendant Latasha Diane Williams claims an equal protection violation, requiring us to decide whether the Legislature had a rational basis to distinguish between two classes. Under Penal Code section 1170, subdivision (d) (section 1170(d)), juvenile offenders with life without parole (LWOP) sentences can seek resentencing after at least 15 years custody.[1] Another class of juvenile offenders—offenders serving the functional equivalent of LWOP for Eighth Amendment purposes (functional LWOP)—lacks that opportunity.

I part ways from the majority's reasoning, which follows a line of authority that "collapse[s] the separate Eighth and Fourteenth Amendment analyses into one." (*People v. Thompson* (2025) 112 Cal.App.5th 1058, 1073, review granted September 24, 2025, S292540 (*Thompson*); see also *People v. Baldwin* (2025) 113 Cal.App.5th 978, 1004 [following *Thompson*].) I agree with the majority's conclusion but reach it through the equal protection analysis our Supreme Court applied in *People v. Hardin* (2024) 15 Cal.5th 834 (*Hardin*) and *People v. Williams* (2024) 17 Cal.5th 99 (*Williams*). This analysis builds on *Thompson*, which applies *Hardin* and *Williams* to section 1170(d).

As explained in Section I below, the Legislature had a rational basis to provide resentencing hearings to only those with LWOP. The Legislature sought to give juvenile LWOP offenders a meaningful opportunity for parole and tailored the statute accordingly.

---

[1] Undesignated statutory citations are to the Penal Code.

1

Section I examines the basis for section 1170(d) at enactment. All juvenile LWOP sentences result from section 190.5, which offers two choices: 25 years to life or LWOP. Any defendant granted resentencing under section 1170(d) may seek the 25 years to life option that the Legislature expected would serve as the alternative to LWOP. In contrast, defendants are sentenced to functional LWOP in diverse ways. Because section 1170(d) was crafted for LWOP offenders and did not fit the functional LWOP group, the Legislature had a rational basis for the classification.

In Section II, I discuss, but do not decide, a possible equal protection argument that section 1170(d) has *lost* its rational basis through later legislation.

I.      The Legislature Had a Rational Basis to Provide Resentencing for Juvenile LWOP Offenders but Not Functional LWOP Offenders

Absent a meaningful opportunity for parole, Williams's sentence of 59 years to life would bring her within the scope of Eighth Amendment caselaw holding that a sentence with a lengthy term before parole eligibility can be as cruel and unusual as one with no eligibility. This Eighth Amendment analysis treats juveniles sentenced to LWOP and functional LWOP identically. (See *People v. Caballero* (2012) 55 Cal.4th 262, 268.)

This appeal does not implicate the Eighth Amendment. It concerns equal protection and the Legislature's decision to extend an ameliorative benefit to one class but not another. "[I]n contrast to a cruel and unusual punishment analysis, the equal protection inquiry asks whether there is a rational basis for the Legislature to treat certain individuals differently when prescribing the consequences under an ameliorative

2

statute . . . ." (*Williams*, *supra*, 17 Cal.5th at p. 133.)

The rational basis test asks "whether the unequal treatment bears a rational relationship to a legitimate state purpose." (*Williams*, *supra*, 17 Cal.5th at p. 124.) A challenger must show that " ' "no rational basis for the unequal treatment is reasonably conceivable." ' " (*Ibid*.) The question is whether the classification is rational, not whether it is wise or optimal. (*Ibid*.)

The Legislature enacted section 1170(d), effective in 2013, to apply only to the class of juveniles with LWOP. Section 1170(d) provides "an avenue for juvenile offenders serving terms of life without parole to seek recall of their sentences and resentencing to a term that includes an opportunity for parole." (*In re Kirchner* (2017) 2 Cal.5th 1040, 1049.) When a juvenile defendant with LWOP "has been incarcerated for at least 15 years, the defendant may submit to the sentencing court a petition for recall and resentencing." (§ 1170, subd. (d)(1).) Resentencing is performed "in the same manner as if the defendant had not previously been sentenced." (§ 1170, subd. (d)(7).)

The Legislature understood that resentencing for LWOP juveniles would arise in a single, uniform circumstance. The "only offense that can result in LWOP for minors in California is first degree murder with special circumstances." (Assem. Com. on Appropriations, Analysis of Sen. Bill No. 9 (2011-2012 Reg. Sess.) as amended Aug. 15, 2011, p. 3 (Assembly Approp.)) The statute governing that sentence authorizes only two penalties—LWOP or 25 years to life. (§ 190.5.) The legislative history likewise recognized that "if the court opts to re-sentence," the resulting sentence would include a

3

"25-year minimum," subject to enhancement.  (Assembly Approp., at p. 1.)  The California District Attorneys Association opposed the bill while recognizing there was only one alternative sentence at issue; it argued that LWOP was generally appropriate and 25 years to life should be a "rare exception."  (*Id*. at p. 5.)  Proponents, such as the Pacific Juvenile Defender Center, argued that the law would motivate rehabilitation since offenders would be "given an opportunity to ask for 25 years to life."  (Assembly Com. on Public Safety, Analysis of Sen. Bill No. 9 (2011-2012 Reg. Sess.) as Amended May 27, 2011, p. 11.)  The Legislature thus authorized resentencing hearings for a single offense with a single alternative sentence:  25 years to life.

The Legislature therefore enacted section 1170(d) for a class whose members could all seek the same relief.  That relief was specific, identified during the legislative process, and consistent with the Legislature's goal.  That is, each juvenile with an LWOP sentence would, upon a preliminary showing, seek the alternative that section 190.5 offered, 25 years to life.

Williams argues that juveniles with life sentences requiring 50 years or more before parole eligibility also deserve resentencing.  That may be sound policy.  It nevertheless was rational for the Legislature, when enacting section 1170(d), to limit resentencing to LWOP juveniles.  Generally, the Legislature may proceed incrementally in addressing excessive juvenile punishment.  (*Thompson*, *supra*, 112 Cal.App.5th at p. 1077, rev. gr.)  The statute was a """"modest and narrowly focused piece of legislation""""" (*ibid.*), applying to only 293 inmates.  (*Id.* at p. 1076.)  The Legislature was not required

4

to address every aspect of the problem at once, so long as it had a rational basis for limiting relief.

The Legislature could rationally conclude that *resentencing* was ill-suited to address excessive juvenile functional LWOP sentences. This explains how the Legislature's later enactment of section 3051 youth offender parole relates to Williams's appeal. It is not that section 3051 "renders her sentence neither LWOP nor the functional equivalent of LWOP" (maj. opn., *ante*, at p. 14), which is how section 3051 helps solve Eighth Amendment concerns. Instead, under equal protection analysis, section 3051 illustrates that it was rational to reserve resentencing hearings for LWOP offenders while providing earlier parole to non-LWOP juveniles through a mechanism that fit them.

There was a rational basis for the Legislature to conclude that resentencing was not the best way to provide an earlier parole opportunity for juveniles sentenced to long, but non-LWOP, sentences. Sentences constituting the functional equivalent of LWOP can arise from a wide range of crimes and enhancements. (See, e.g., *People v. Lewis* (2013) 222 Cal.App.4th 108, 117-118 [115 years to life from three 25 year to life rape or digital penetration sentences, 15 years to life for second-degree murder, and a 25-years-to-life gun enhancement]; *People v. Caballero*, *supra*, 55 Cal.4th at p. 265 [110 years to life from three attempted murder convictions and three gun enhancements]; *People v. Jones* (2017) 7 Cal.App.5th 787, 816 [80 years to life from two consecutive 40-years-to-life murder terms and a concurrent 35-years-to-life attempted murder term]; *People v. Vang* (2001) 87 Cal.App.4th 554, 557 [two juveniles each with ten-count aggregate

5

sentences of 59 years to life]; *People v. Em* (2009) 171 Cal.App.4th 964, 969 [50 years to life from 25 years to life for murder and a 25-years-to-life gun enhancement].)

When the Legislature enacted section 1170(d), a resentencing hearing could not provide an earlier parole date for some of these defendants.  A good illustration is a defendant who already received the lowest possible sentence for special circumstance murder (25 years to life) but had mandatory enhancements that made the sentence higher. (See *People v. Gonzales* (2001) 87 Cal.App.4th 1, 7 [two juvenile defendants with 50 years to life based on 25 years to life for a special circumstance murder and 25 years to life for a mandatory gun enhancement].)  That sentence is the functional equivalent of LWOP.  But when the Legislature enacted section 1170(d), a resentencing court would be powerless to provide earlier parole.  And, even apart from juveniles *precluded* from an earlier parole date by law, those with long sentences from multiple counts might be unlikely to get one through resentencing.  It was rational for the Legislature to decide not to extend section 1170(d) resentencing to a class of juvenile offenders for whom resentencing would consume state resources without advancing the statute's purpose.

Williams is an example of a juvenile who, if granted resentencing when section 1170(d) was adopted, would still necessarily receive a functional LWOP sentence.  She had two 25-years-to-life firearm sentences under section 12022.53, subdivision (d), that were mandatory and consecutive.  (See *People v. Tirado* (2022) 12 Cal.5th 688, 695.) Resentencing could not have provided a parole date before 50 years, so granting her a resentencing hearing could not have achieved the Legislature's goal.

6

In contrast, for juvenile LWOP offenders, the resentencing relief available was uniform and clear-cut. At every resentencing hearing, the defendant would seek a 25-years-to-life-sentence under section 190.5 instead of LWOP. Including heterogeneous functional LWOP defendants in section 1170(d) would create many more resentencings with varied possible outcomes, including those where a court could not impose an earlier parole date. It was rational for the Legislature to distinguish between the two classes.

II.     A Claim That the Rational Basis Has Dissipated Due to Other Statutes

Had this equal protection challenge been raised in the first few years after 2013, the analysis would likely end with the preceding section. That is, the Legislature, when it enacted section 1170(d), had a rational basis for classifying juvenile LWOP defendants, but not those with functional LWOP, as eligible to seek a resentencing hearing. That comports with the typical rational basis inquiry, which examines the Legislature's decision. (See *People v. Hardin*, *supra*, 15 Cal.5th at p. 866 [court's task is "limited" to determining "whether . . . the Legislature's decision" to create a class had a rational basis]; *People v. Williams*, *supra*, 17 Cal.5th at p. 138 [same].)

Williams's claim instead rests on ameliorative statutory changes enacted *after* section 1170(d). When section 1170(d) was enacted, Williams faced mandatory gun charges requiring a minimum 50-years-to-life sentence. In a resentencing hearing, she could receive no more favorable sentence than that. In 2017, though, the Legislature enacted a law that empowered courts to strike or dismiss her gun enhancements, including substituting less severe ones. (*People v. Tirado*, *supra*, 12 Cal.5th at pp. 696,

7

700.) Now she could benefit more significantly from a resentencing hearing.

A threshold question is whether a classification, rational when enacted, may lose that justification through later changes to separate statutes. If so, to demonstrate that it occurred here, Williams and the Department must make a more specific showing; they bear the burden of proof. (*People v. Hardin*, *supra*, 15 Cal.5th at p. 851.)

For one thing, they need to show exactly what now deprives the classification of a rational basis. Standing alone, the fact that Williams and others with functional LWOP could now benefit from resentencing does not show that the law's rational basis has dissipated. The legislative goal in enacting section 1170(d) was to provide juvenile offenders with LWOP a chance at "resentencing to a term that includes an opportunity for parole" (*In re Kirchner*, *supra*, 2 Cal.5th at p. 1049), and juvenile offenders with LWOP who are resentenced under section 1170(d) and section 190.5 still receive, at best, the same 25-years-to-life sentence available to them in 2013. Those with functional LWOP now receive a section 3051 youth offender parole hearing at 25 years and thereby obtain a similar parole opportunity even without a resentencing. The Legislature still could rationally decide that the parole opportunity goal has been met.

Later statutory changes, however, have created a different incongruity. When section 1170(d) was enacted, juvenile murder cases were prosecuted only in adult court. (See former Welf. & Inst. Code, § 602, subd. (b)(1) (effective 2012).) That is no longer so. Juvenile offenders with LWOP who qualify for a section 1170(d) resentencing now could receive one benefit beyond what the Legislature contemplated. They can receive a

8

hearing to consider transfer to juvenile court, where adjudication "typically results in less severe punishment for the juvenile offender." (*People v. Padilla* (2022) 13 Cal.5th 152, 158.) Consequently, Williams and the Department might base an equal protection claim on the new circumstance that, under section 1170(d), juvenile offenders convicted of special circumstance murder who received LWOP receive an opportunity for a transfer hearing to juvenile court, but those with lesser crimes and sentences do not.

That theory raises at least two substantial questions. First, if the alleged disparate treatment results from the availability of a juvenile transfer hearing, rather than the denial of early parole, the class harmed is not just those with sentences that are the functional equivalent of LWOP. It is potentially all juveniles in custody. (See *People v. Hardin*, *supra*, 15 Cal.5th at pp. 850-851 [whether the classes are similarly situated is not an element of an equal protection claim, only whether there is a rational basis to distinguish them].) In other words, if it violates equal protection to offer resentencing with a transfer hearing to juveniles with LWOP but not to juveniles with life sentences that have parole eligibility at 50 years or more, does it violate equal protection to deny the hearing to those with (for example) determinate sentences of 10, 20, or 30 years?

Secondly, section 1170(d) is not the only statute in which the Legislature has offered resentencing hearings limited to those with "worse" punishment than others. Under section 1172.75, inmates with a prison prior sentence receive a resentencing hearing but not those without a prison prior. If Williams's sentence contained a prison prior, she would likely have received a resentencing hearing. If there is an equal

9

protection violation from section 1170(d)'s selective provision of resentencing hearings to juveniles, does section 1172.75 work the same violation?

We should consider these questions where the proponent of an equal protection claim has articulated a precise basis for concluding that the Legislature's classification lacks a rational basis. The Legislature had one when it acted: every juvenile with LWOP could potentially seek a 25-years-to-life sentence on the murder count, but juveniles with functional LWOP faced a wide array of situations, some in which resentencing could not even potentially offer them a sentence with earlier parole. Because they have not developed a specific argument showing that section 1170(d)'s classification has lost its rational basis, Williams and the People have not carried their burden of demonstrating an equal protection violation. Unlike the majority, however, I do not reach that conclusion based on whether Williams's sentence "is" functional LWOP for Eighth Amendment purposes. (See maj. opn., ante, at pp. 14-17). I therefore concur in the result but offer this separate analysis.

RAPHAEL
J.

10